UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| INDIANA S. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:13CV2457 TIA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

suit involves Applications for Disability Insurance Benefits under Title II of the Social Security

Act and for Supplemental Security Income under Title XVI of the Act.  Claimant has filed a Brief

in Support of his Complaint, and the Commissioner has filed a Brief in Support of her Answer.

The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On July 11, 2011, Claimant Indiana S. Rice filed Applications for Disability Insurance

Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 156-71) and for Supplemental

Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381,

et. seq.  (Tr. 147-55).[1]  Claimant states that his disability began on June 30, 2011,[2] as a result of

[1]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer (Docket No. 13/filed February 18, 2014).

[2]Although Claimant originally alleged an onset date of February 15, 2010 in his applications, at the hearing, he amended her onset date to June 30, 2011.  (Tr. 16, 36,184).

depression and anxiety. (Tr. 79, 190). On initial consideration, the Social Security

Administration denied Claimant's claims for benefits. (Tr. 79-83). Claimant requested a hearing

before an Administrative Law Judge ("ALJ"). (Tr. 84-86). On August 7, 2012, a hearing was

held before an ALJ. (Tr. 32-75). Claimant testified and was represented by counsel. (Id.).

Vocational Expert Julie Bose also testified at the hearing. (Tr. 69-75). Thereafter, on August 23,

2012, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 13-27). After

considering the representative brief, the Appeals Council found no basis for changing the ALJ's

decision on October 21, 2013. (Tr. 1-6, 9-12, 240-43). The ALJ's determination thus stands as

the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.  Hearing on August 7, 2012

#### 1.  Claimant's Testimony

At the hearing on August 7, 2012, Claimant testified in response to questions posed

by the ALJ and counsel. (Tr. 32-75). At the time of the hearing, Claimant was twenty-six years

of age, and his date of birth is April 7, 1986. (Tr. 39). Claimant stands at five feet ten inches and

weighs 145 pounds. (Tr. 39). He is right-handed. (Tr. 40). Claimant is single without children

and lives with two friends. He takes care of fourteen dogs and a dozen cats. (Tr. 40). Claimant

receives food stamps and Medicaid, and he helps around the house in lieu of paying rent. (Tr. 41-

42). He takes care of the animals and does yard work. (Tr. 42). Claimant completed the

eleventh grade and then received his GED. (Tr. 42). He received computer training at the Job

Corps. (Tr. 43). Claimant has a computer, a cell phone, an email address, and a Facebook page.

(Tr. 43).

Claimant testified that on June 30, 2011, he was experiencing extreme depression and having suicidal thoughts and presented at a hospital for admission. (Tr. 44). He testified that his stress and anxiety prevent him from performing a sit-down job. (Tr. 44). He last worked as a janitor in a health center from August, 2009 through February 15, 2010 cleaning rooms in a nursing home. (Tr. 44-45). Claimant was fired, because the other employees were bothered by his talking to himself on the job. (Tr. 45). He mopped floors and lifted trash. Claimant testified that he could not perform the janitorial job, because he has problems being around groups of people. Prior to working as a janitor, he worked as a crew member at Arby's for two to three months in 2009. (Tr.45). Claimant prepared sandwiches, worked the drive-through window, and worked the cash register. (Tr. 46). He quit after his car broke down, and he lacked transportation to get to work. He attended the Job Corps in 2007-2008 and was trained in computer repair and received some payment. (Tr. 46). He performed dock-loading work for one month at a potato products manufacturing company, but family issues forced him to leave the job and move back to Missouri. (Tr. 47). He worked for two to three months on an assembly line at a shoe factory sorting shoe soles based on color and size, but he quit when he no longer wanted the job. Claimant worked at McDonald's for nine months, but he quit when his hours were cut. (Tr. 48). Since June 30, 2011, he has not worked, but he has applied for jobs every couple of months. (Tr. 49). Claimant testified that he has applied for stocking jobs at a grocery stores, because the jobs require little interaction with people. When he applies for a job, he goes to the store and asks if the store is hiring. (Tr. 49).

After waking up around 9:00 a.m., Claimant cleans the house and helps Ms. Wood, one of his roommates, lift and carry things and complete daily activities. (Tr. 50). He plays video games

and completes his online school work. (Tr. 51). He is enrolled in ITT Tech and is working on a two-year associate degree in Web design technology. Claimant testified that he receives the assignments at the beginning of the week and completes them when he has time. (Tr. 52). He taken out student loans and applied for grants. He explained the purpose of getting an associate's degree would be to further his education and be able to obtain employment he could perform from home. He plays video puzzle games on the computer and watches television. (Tr. 52). If he enjoys a particular game, he can play the game for four to six hours. (Tr. 53). Claimant does yard work and mows the lawn and helps take care of the outside animals. (Tr. 54). He goes grocery shopping or dog food shopping once a week for an hour or two. (Tr. 56). Claimant helps wash the dishes, makes his bed, vacuums, and dusts. (Tr. 57).

Although Claimant has a driver's license, he has not driven after June 30, 2011, because he does not own a vehicle. (Tr. 57). He has no driving limitations and would drive if he owned a vehicle. (Tr. 58). He smokes a package of cigarettes each day, and Ms. Wood purchases the cigarettes for him. (Tr. 59).

Claimant takes Chlordiazep for anxiety and testified the medication helps him. (Tr. 59). He takes Pristiq for depression, and he testified the medication is working better than Celexa. (Tr. 60). Dr. Gowda changed his medication one month earlier. (Tr. 60). Dr. Gowda treats his depression, and Claimant testified that Dr. Gowda has helped him. (Tr. 62). He has not been hospitalized recently for depression. (Tr. 63). He has difficulty putting his thoughts into words. He last experienced a panic attack two months earlier, and he blanked out and was non-responsive. He testified how loud noises triggers his anxiety. (Tr. 63). Petting an animal or playing a video game calms him down. (Tr. 64). He was last hospitalized in June 2011 for

treatment of depression and anxiety. He received treatment in the emergency room two months earlier. (Tr. 64).

Claimant testified that he does not have any problems concentrating or paying attention. (Tr. 65). He testified that gets along fine with people except he can be shy around a new person. He has no problems understanding instructions. (Tr. 65). He has some anxiety being in public in general. (Tr. 67).

### 2. Testimony of Vocational Expert

Vocational Expert Julie Bose testified in response to the ALJ's questions. (Tr. 69-75). Ms. Bose summarized his last job as a janitor, light exertional level as described in his testimony and unskilled. (Tr. 70). The ALJ asked Ms. Bose to assume

> a hypothetical individual the claimant's age and education with the past job that you described. I need you to further assume that this individual is limited to work with only occasional interaction with coworkers, supervisors, and the general public. And the individual must avoid even moderate exposure to very loud noises. Can that hypothetical individual perform any of the past relevant work that you described as actually performed or generally performed in the national economy?

(Tr. 71). Ms. Bose responded yes, based on the hypothetical, such individual could perform work as a janitor as normally performed and as performed by Claimant. (Tr. 71). She further opined such individual could perform other work including medium, unskilled positions such as a laundry worker, with 4,100 jobs in Missouri and 280,489 available nationally; hand packer with 2,600 jobs in Missouri and 89,029 available nationally; and a cleaner II with 3,100 jobs in Missouri and 110,133 available nationally. (Tr. 72-73).

Next, the ALJ asked Ms. Bose to assume

any exertional level but limited to work that is socially isolated with only
occasional supervision and with the same limitation, must avoid even moderate
exposure to very loud noises. Can that hypothetical individual perform any of the
past jobs, the janitor job that you described?

(Tr. 72). Ms. Bose responded there would be no change in the numbers and all the previous jobs

she cited could be performed. (Tr. 72-73).

Claimant's counsel asked Ms. Bose to assume

the definition of marked means a complete inability to perform the particular
activity in a normal work setting even for short periods of time? So the person
would have a marked restriction on their ability to interact appropriately with the
general public, work in coordination with or in close proximity to others, accept
instruction, respond appropriately to criticism from supervisors and coworkers,
respond appropriately to routine changes in the work setting or to routine work-
related stressors, demonstrate reliability in a work setting, can sustain extended
periods of employment greater than six months without decompensation - - if you
would assume these type of factors, would such an individual be able to perform
any work that exists in significant numbers in the national economy?

(Tr. 73-74). Ms. Bose responded such individual could perform work altogether including his

past relevant work. (Tr. 74).

### 3. Forms Completed by Claimant

In the Disability Report - Adult, Claimant reported he stopped working on February 15,

2010, because he was fired. (Tr. 190). He completed the GED in 2005 and completed computer

repair training through Job Corps in 2008. (Tr. 191).

In the Disability Report - Appeal, Claimant reported his anxiety makes it difficult to be

around large groups of people for extended amounts of time. (Tr. 209-13).

In the Statement of Claimant or Other Person, he certified that he has not used any illegal

drugs since January 2011. (Tr. 238).

## III.    Medical Records and Other Records

To obtain disability insurance benefits, Claimant must establish that he was disabled within the meaning of the Social Security Act not later than the date his insured status expired - March 31, 2012. Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); see also 42 U.S.C. §§ 416(I) and 423(c); 20 C.F.R. § 404.131.

On May 9, 2010, Claimant sought treatment in the emergency room at Wishard Health Services after being struck by a vehicle during a suicide attempt. (Tr. 246). He reported intentionally jumping in front of a moving vehicle and not taking any medications. (Tr. 247). THC, Meth, and Oxycontin are listed as his current substance abuse, and he reported being clean for six months. (Tr. 248, 263). He reported not liking how his life is going. (Tr. 248). He was admitted as mentally ill and dangerous. (Tr. 245-80). Claimant reported moving to Indianapolis four months earlier after losing his job and moving in with a former girlfriend who has since remarried. (Tr. 261). He helps out by babysitting her daughter and completing daily household tasks. (Tr. 261, 263). After fighting with her, he became very angry and stormed out and then jumped in front of a vehicle. (Tr. 261). He reported mood swings, inappropriate anger, poor sense of self, and several attempts to avoid abandonment. He developed dependence on Oxycontin when treated for chronic back pain. He had daily meth, THC and Oxycontin use in the past. (Tr. 261).

Dr. Patibandia found Claimant to have polysubstance dependence in full remission, borderline personality traits, relationship stressors, and lack of social support system, housing, financial. (Tr. 261, 264). Dr. Patibandia noted Claimant to be suffering from depression, and his

suicide attempt may have been motivated to prevent being abandoned or to gain sympathy of his ex-girlfriend. (Tr. 262). Dr. Patibandia opined if the girlfriend is willing to take Claimant back, his suicide ideation would resolve and, if not, he may need to be admitted to arrange a suitable crisis plan. (Tr. 262). Claimant was released medically after x-rays showed no broken bones. (Tr. 263). On May 11, 2010, Claimant reported feeling less depressed and receiving help with his anger management. (Tr. 277). After being prescribed Zoloft, Claimant noted he had taken Zoloft in the past, and he was glad to be prescribed the anti-depressant again. (Tr. 273). Upon discharge, he would return to Missouri escorted by his ex-girlfriend to live with his mother. (Tr. 267). At the time of discharge, he denied any suicidal ideations, had a bright affect, and looked forward to returning home. (Tr. 280).

On June 30, 2011, Claimant presented at Saint Luke's Medical complaining of depression and suicidal thoughts over the past several months. (Tr. 287). He reported he had been looking for a job, but he has trouble dealing with people and cannot function in crowded places. He reported being hospitalized three times but after leaving the hospital, he did not continue taking his medications and has been off medications for almost one year. He was admitted for treatment, and Dr. Niewald started him on Celexa. Dr. Niewald found him to be stabilized on medication as he denied any suicidal ideation. (Tr. 287). In a consultation for medical management, Dr. Niewald noted how Claimant reported being diagnosed with bipolar disorder in the past, but he has not been on any medication for quite sometime. (Tr. 293). Dr. Niewald agreed with his admission to the inpatient facility for further psychiatric evaluation and treatment. (Tr. 297).

In the Psychiatric Review Technique completed on August 23, 2011 by Dr. Mark Altomari, he found there was insufficient evidence to assess the degree of functional limitation

without having current functional information.  (Tr. 308-18).  Dr. Altomari noted how Claimant failed to return ADLs despite multiple attempts to contact him.  (Tr. 318).

In the September 28, 2011 initial intake assessment at Pathways on referral by Dr. Barbin, His presenting issues were high anxiety and feelings of depression.  (Tr. 470).  Claimant reported he wanted to learn how to manage his depression, anxiety, and get disability approved or find work.  (Tr. 475).  In the Diagnostic Review Form, Mary Tatkenhorst, a community support specialist, listed major depression and post traumatic stress disorder as his clinical disorders, and economic, occupational, and problems relating to social environment as his psychosocial problems.  (Tr. 468).

In the Program Authorization, he reported his mother has had many relationships with men, and he has been physically abused by his step fathers.  (Tr. 466).  His biological father died from suicide when he was three years old.  (Tr. 466).  In the October 13, 2011 Individual Progress Note, he reported a lot of anxiety and depression, and he has anxiety while filling out job applications and trouble in social situations.  (Tr. 464).

On September 20, 2011, Claimant presented at Sullivan Medical to establish care and receive treatment for anxiety.  (Tr. 331).  He reported having difficulty working or meeting social obligations and experiencing anxiety.  He reported doing better since being discharged from St. Luke's psychiatric unit last July and taking Celexa.  (Tr. 331).  Examination showed his affect to be flat, and he is not anxious.  (Tr. 333).  Dr. Jennifer Barbin found his insight, judgment, concentration, and attention span to be normal.  (Tr. 333).  In follow-up treatment on October 19, he reported feet pain.  (Tr. 328-30).  On December 14, he presented with back pain.  (Tr. 325).  Examination showed no cervical or lumbar spine tenderness.  (Tr. 326).

In the September 28, 2011 Diagnostic Review Form, major depression and posttraumatic stress disorder are listed as his clinical disorders. (Tr. 468). Economic problems, occupational problems, other psych/environmental, and problems relating to social environment are listed as his psychosocial and environmental problems. (Tr. 468). In the Initial Intake Assessment, he reported having high anxiety, problems being around groups of people, and becoming stressed when completing paperwork. (Tr. 470-76).

In the initial meeting with Rebecca Lewis of Community Support Services ("CSS") on October 13, 2011, Claimant reported having a lot of anxiety and depression problems. (Tr. 464). He reported experiencing anxiety while filling out job applications, and he has trouble in social situations. (Tr. 464). He indicated that he wanted to learn how to manage his depression and anxiety and get disability approved or find work. (Tr. 466).

On October 14, 2011, Dr. Bhaskar Gowda completed the initial psych evaluation of Claimant. (Tr. 460). Claimant reported not having worked for two years and having applied for disability. (Tr. 460). He reported feelings of hopeless, helpless, and worthless as he cannot get or hold a job and feeling increasingly guilty for his dependency situations. He constantly worries about finances, his future, and the relationship with his parents. (Tr. 460). He denied symptoms of PTSD. (Tr. 461). Claimant reported ten suicide attempts with ten prior hospitalizations. (Tr. 461). He last worked as a computer repair person, and he lives with his mother who supports him. (Tr. 462). Dr. Gowda observed Claimant to have normal speech, his flow of thoughts to be goal directed, and no paranoia in his thought content. He denied any visual hallucinations. Dr. Gowda observed Claimant to be alert and oriented to time, place and person, his intelligence to be above average, and his immediate recall and recent and remote memory appeared to be good.

(Tr. 462).  Dr. Gowda found Claimant to have a GAF of 50 and found him to have bipolar

disorder Type 1 depressed type, generalized anxiety disorder, panic disorder with agoraphobia,

and borderline personality disorder.  (Tr. 453).  In the progress note, Ms. Lewis noted his mood

was good and affect was congruent.  (Tr. 459).  In follow-up session on October 17, Claimant

reported his anxiety is alright, and his depression is not really bad.  (Tr. 458).  He reported his

depression to be under control, and his anxiety is under control so long as he is not in social

situations.  He explained how he wanted to find a job fixing computers since he is certified in that

area.  (Tr. 458).

In the October 18, 2011 progress note, Claimant reported his anxiety prevents him from

entering stores, and he stays in bed when depressed.  (Tr. 455).  Ms. Tatkenhorst noted how his

case had been assigned to Ms. Lewis.  (Tr. 457).

In follow-up treatment on October 28, 2011, he reported becoming irritable and impulsive,

his energy and motivation to be poor, and his anxiety/panic attacks to be worse.  (Tr. 452).  Dr.

Gowda continued his medication regimen.  (Tr. 453).  On November 23, Dr. Gowda continued

his medication regimen in follow-up treatment.  (Tr. 450-51).  Claimant reported doing a lot

better and working for someone and in return, her housekeeper helps him.  (Tr. 449).  He is

waiting for his SSI.  (Tr. 449).  Ms. Lewis observed Claimant to be agitated.  He moved to Cuba

and helps around the house doing maintenance, yard work, and taking care of the animals.  (tr.

447).  He reported being unable to work, because he cannot stand being around people for too

long. (Tr. 447).

On November 30, 2011, he had his weekly meeting with Ms. Lewis.  (Tr. 446).  Ms.

Lewis observed his mood to be good and his affect to be congruent.  He reported not being upset

lately and now has motivation to do every day things like shower.  (Tr. 446).  On December 21, Claimant appeared for a doctor's appointment, but the appointment had been changed.  (Tr. 44).  On December 27, Dr. Gowda observed insight and judgment appeared to be good.  (Tr. 442).  He reported feeling better and helping his family take care of dogs and other animals.  (Tr. 441).  His energy and motivation are good, but his anxiety attacks are worse.  (Tr. 441).  Dr. Gowda continued his medication regimen.  (Tr. 442).

During his weekly meetings on January 3 and 9, 2012, Claimant reported being depressed lately.  (Tr. 438, 440).  He has looked into schools, because he wanted to be recertified on computers.  (Tr. 438).

Ms. Lewis met with Claimant to help him get to the Pathway's office for his appointment with Dr. Gowda.  (Tr. 433).  Ms. Lewis observed his mood to be good and his affect to be congruent.  (Tr. 433).  He reported being excited about the possibility of attending school online and has completed some financial aide applications.  (Tr. 434).  He has handled the application process well without any anxiety.  Claimant reported not having any anxiety since his medication was changed from Buspar to Limigdal.  He discussed more job opportunities and the possibility of going further in school.  (Tr. 434).  During treatment on January 24, 2012, Dr. Gowda increased his Celexa dosage and stopped his Buspar prescription.  (Tr. 436).  Claimant reported doing a "lot better now" and helping his landlord clean her trailers. (Tr. 435).  His mood has improved, and "[h]e has been trying to get a job now as he gets bored quickly." He reported his motivation and energy are good, but his anxiety/panic attacks are worse.  (Tr. 435).

Ms. Lewis met with Claimant to help him get to the Pathway's office for his appointment with Dr. Gowda on February 22, 2102.  (Tr. 428).  Ms. Lewis observed his mood to be good and

his affect to be congruent.  He reported having little anxiety but being depressed due to Valentine's Day.  To keep busy, he has been taking care of the animals and cleaning the house. (Tr. 433).  Dr. Gowda observed his thoughts to be goal directed and no paranoia in his thought content.  (Tr. 431).  Dr. Gowda noted he is alert and oriented to time, place, and person; his immediate recall, recent and remote memory appeared to be good; and his insight and judgment appeared to be good.  (Tr. 431).

On March 7, 2012, Claimant returned to Sullivan Medical for treatment of joint and back pain and abdominal discomfort.  (Tr. 322).  Examination showed tenderness of thoracic and lumbar spine and a full range of motion of both.  (Tr. 323).  The March 14, 2012 x-rays showed negative results.  (Tr. 336-38).  The March 14, 2012 of his right foot showed an old healed fracture deformity of the proximal fifth metatarsal.  (Tr. 339).  In follow-up on April 11, he presented with clearance for foot surgery.  (Tr. 319).

Ms. Lewis met with Claimant to help him get to the Pathway's office for his appointment with Dr. Gowda on March 20, 2012.  (Tr. 423).  Ms. Lewis observed his mood to be good and his affect to be congruent.  Claimant reported starting school the previous day, and he has already completed a homework assignment.  His anxiety has been fine, but he has had a little depression. (Tr. 423).  Claimant reported having a hard time going out due to financial reasons, and he is waiting on disability.  (Tr. 425).  Dr. Gowda continued his medication regimen.  (Tr. 427).

While receiving treatment of equinus right foot, Dixie Fox observed Claimant to be alert and oriented, and his mood affect to be normal.  (Tr. 501)

On April 17, 2012, Claimant reported he has been feeling anxious as he is cutting down his smoking.  (Tr. 419).  Dr. Gowda observed his thoughts to be goal directed and no paranoia in his

thought content. (Tr. 420). Dr. Gowda noted he is alert and oriented to time, place, and person; his immediate recall, recent and remote memory appeared to be good; and his insight and judgment appeared to be good. Dr. Gowda continued his medication regimen. (Tr. 420).

On April 26, 2012, Claimant met Gregory Hutchison of CSS. (Tr. 417). He reported being in a good mood lately and feeling well. He has been taking his medications, and the medications seem to be working well. Claimant reported his online classes are going well, and he might look into getting a part time job. (Tr. 417).

Claimant met with Mr. Hutchison on May 2, 2012, to assess his behavior and review medication management. (Tr. 415). Claimant reported feeling pretty well lately, and his online classes are going well. He continues to help with the household chores and take care of several animals. (Tr. 415). On May 9, Claimant reported taking his medications, and his medications are working well. (Tr. 413). He had to contact the IT Department to help him get his internet working again. (Tr. 413). On May 14, he reported doing well with his school work and using his computer and playing video games. (Tr. 411).

On May 6, 2012, Claimant presented at Missouri Baptist Sullivan Hospital accompanied by his sister who stated her brother has PTSD and the fighting between his mother and his step father set him off. (Tr. 345). Dr. Otha Rains ordered a saline lock and lithium. (Tr. 346). A urine test showed positive for Benzo. (Tr. 352).

On May 22, 2012, Mr. Hutchison accompanied him to his visit with Dr. Gowda. (Tr. 406). He reported being slightly depressed, because he could not do much after his foot surgery. (Tr. 407). He is busy with his online course work. Claimant told Dr. Gowda that he was having difficulty sleeping. Dr. Gowda adjusted his medications to try to help him have more energy and

sleep better. (Tr. 407, 409). He reported feeling depressed after undergoing surgery on his ankle. (Tr. 408). His energy and motivation are good, and he helps take care of the dogs and other animals. (Tr. 408).

Claimant met with Mr. Hutchison on May 31, 2012, and reported sleeping better and finishing one of his classes. (Tr. 404). On June 6, Claimant reported feeling better each day, and his medication seemed to be working well. (Tr. 402). His anxiety has been under control. He has been studying for a final exam, and he starts more classes on June 18. (Tr. 402). In the June 12 meeting, he reported feeling slightly depressed and having some suicidal ideation. (Tr. 400). He completed two classes and will start two new classes on June 18. He did well in his classes. Claimant reported being able to do a few more household chores. (Tr. 400). On June 21 during his meeting with Mr. Hutchison, he reported starting his new classes, Math 1 and Web Programming, and having attended a barbeque for his grandmother. (Tr. 398). He became a little nervous with all of the people, but he is becoming bored sitting around the house. (Tr. 398).

In follow-up treatment with Dr. Gowda on June 26, 2012, Claimant reported feeling depressed from time to time and having mood fluctuations on a regular basis. (Tr. 395). He has suicidal thoughts on a daily basis, but he has not been acting on the thoughts. He is taking online classes and working towards a degree in web design technology. A friend helps him with housing and food stamps. (Tr. 395). Dr. Gowda observed his thoughts to be goal directed and no paranoia in his thought content. (Tr. 396). Dr. Gowda noted he is alert and oriented to time, place, and person; his immediate recall, recent and remote memory appeared to be good; and his insight and judgment appeared to be fair. Dr. Gowda changed his medication regimen. (Tr. 396). Dr. Gowda encouraged him to continue working towards his degree and requested his counsel

- 15 -

"fax any documents that the client needed to have filled out for the hearing" on August 7. (Tr. 393).

On July 5, 2012, Claimant reported feeling better lately and sleeping better. (Tr. 391). The Pristiq was giving him more energy, and he seemed to be feeling better. His online classes were going well, and he shared a few of his web programming projects with Mr. Hutchison. Claimant stated that he would "want Dr. Gowda to assist him with his disability process by writing a letter or filling out paperwork." (Tr. 391).

During treatment on July 11, 2012, Claimant reported his mood being more even. (Tr. 388). He denied having any suicidal thoughts. His friend helps him with housing and food stamps, and he has been taking online classes. (Tr. 388). Dr. Gowda observed his thoughts to be goal directed and no paranoia in his thought content. (Tr. 389). Dr. Gowda noted he is alert and oriented to time, place, and person; his immediate recall, recent and remote memory appeared to be good; and his insight and judgment appeared to be fair. Dr. Gowda continued his medication regimen. (Tr. 389).

On July 24, 2012, Dr. Gowda completed an Assessment for Social Security Disability Claim wherein he opined that Claimant's mental impairments would prevent him from engaging in any kind of sustained full-time competitive employment, and his impairments would have prevented him from working on or before March 31, 2012. (Tr. 478). In the Residual Functional Capacity Assessment, Dr. Gowda found Claimant to have marked limitations in his ability to remember and carry out detailed instructions and maintain adequate attention and moderate limitations in his ability to maintain a work schedule, understand and carry out simple instructions, to make appropriate work related decisions, and to complete a normal work week. (Tr. 480).

Dr. Gowda further found Claimant to have marked limitations in social interactions including his ability to interact appropriately with the general public or customers and adaptation. (Tr. 480).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security Act through March 31, 2012. (Tr. 18). Claimant has not engaged in substantial gainful activity since June 30, 2011, the amended alleged onset date. (Tr. 18). The ALJ found that the medical evidence establishes that Claimant has the severe impairments of bipolar disorder I, depressed type, generalized anxiety disorder, panic disorder with agoraphobia, and borderline personality disorder, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18-20). The ALJ found that Claimant has the residual functional capacity to perform the full range of work at all exertional levels but with the following restrictions: he is limited to work with only occasional interaction with coworkers, supervisors, and the general public; and he must avoid even moderate exposure to very loud noises. (Tr. 21). He is able to perform past relevant work as a janitor. (Tr. 25). In the alternative, the ALJ found there are other jobs existing in the national economy he is also able to perform. Considering his age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform such as laundry worker, hand packer, and cleaner II, . (Tr. 26). The ALJ concluded that Claimant has not been under a disability from June 30, 2011, through the date of the decision. (Tr. 27).

## V.    Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is

not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-42 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the claimant's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese , 552 F.3d at 730 (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)).  When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id.  The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730.  Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000).  See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the

ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to accord appropriate weight to his treating physician. Claimant also contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess his credibility.

## A.     Weight Given to Treating Doctor

The undersigned finds that the ALJ considered Dr. Gowda's assessments and gave little weight to his opinions in his written opinion as follows:

> The undersigned has considered the opinions by Dr. Gowda, the claimant's treating psychologist....  The undersigned notes that Dr. Gowda's answers ... [in the assessments] are not consistent with his observations in his treating notes. ... Dr. Gowda gave either "moderate" or "marked" limitations in every category of consideration; however, these limitations are inconsistent with Dr. Gowdy's [*sic*] observations of the claimant in his treating notes.  Between September 2011 and July 2012, Dr. Gowda generally observed that the claimant was cooperative, maintained good eye contact, had overall good personal hygiene, had normal psychomotor activity, had normal speech, had a euthymic mood and appropriate affect, had goal-directed thoughts, had no suicidal plans, denied auditory or visual hallucination, had no paranoia in his thought content, was alert and oriented x3, and had good immediate recall, had fair insight and judgment, and demonstrated above average intelligence.  The claimant regularly reported to Dr. Gowda and the claimant's caseworker that his anxiety and depression were well controlled with medications and that he was doing well....  These observations by Dr. Gowda and the reports of the claimant in the Pathways treating notes are inconsistent with the "marked" limitations Dr. Gowda gives the claimant in [the RFC assessment].  Due to the inconsistencies with his own treating notes and with the overall evidence of record, the undersigned gives Dr. Gowda's assessments little weight.

(Tr. 24-25) (internal citations omitted).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

A treating physician's opinion may be, but is not automatically, entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2P, 1996 WL 374188 (July 2, 1996). Even a well-supported medical opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the record. Id. "The record must be evaluated as a whole to determine whether the treating physician's opinion should control." Tilley, 580 F.3d at 679. When a treating physician's opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010( (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)). "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." Perkins v. Astrue, 2011 WL 3477199, *2 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009)). The ALJ is charged with the responsibility of resolving conflicts among the medical opinions. Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008).

Additionally, Social Security Ruling 96-2p states in its "Explanation of Terms" that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, at *2 (S.S.A. July 2, 1996). SSR 96-2 clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require the ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

On July 24, 2012, Dr. Gowda completed an Assessment for Social Security Disability Claim wherein he opined that Claimant's mental impairments would prevent him from engaging in any kind of sustained full-time competitive employment. In the Residual Functional Capacity Assessment, Dr. Gowda found Claimant to have marked limitations in his ability to remember and carry out detailed instructions and maintain adequate attention and moderate limitations in his ability to maintain a work schedule, understand and carry out simple instructions, to make appropriate work related decisions, and to complete a normal work week. Dr. Gowda further found Claimant to have marked limitations in social interactions including his ability to interact appropriately with the general public or customers and adaptation.

Although a treating physician's opinion is often given "controlling weight," such deference is not appropriate when the opinion is "inconsistent with other substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)). The record as a whole in this case, including the inconsistencies in Dr. Gowda's treatment notes and his function assessment and the effectiveness of his medication, casts doubt on his assertions that Claimant could not perform any kind of sustained full-time competitive

employment.

First, to the extent Dr. Gowda opined that Claimant is disabled and incapable of performing any competitive employment, a treating physician's opinion that a claimant is not able to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion that a claimant is "disabled" or "unable to work" does not carry "any special significance," because it invades the province of the Commissioner to make the ultimate determination of disability). The ALJ acknowledged that Dr. Gowda was a treating source, but that his opinions were not entitled to controlling weight because they are inconsistent with the objective medical evidence in the record. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). The undersigned notes that Dr. Gowda's opinions are also inconsistent with his own treatment notes inasmuch as he never found such functional limitations during treatment.

Dr. Gowda treated Claimant two weeks before completing the function assessment in addition to meeting with Mr. Hutchison, but he did not report the conditions and symptoms that he claims render him totally disabled. Dr. Gowda noted Claimant to be alert and oriented to time, place, and person; his immediate recall, recent and remote memory appeared to be good; and his insight and judgment appeared to be fair. Indeed, he reported the Pristiq giving him more energy, and he seemed to be feeling better. His online classes were going well, and he shared a few of his web programming projects with Mr. Hutchison. Claimant stated that he would "want Dr. Gowda

to assist him with his disability process by writing a letter or filling out paperwork."

The ALJ acknowledged that Dr. Gowda was a treating source, but that his opinions were not entitled to controlling weight, because they were inconsistent with the objective medical records. The undersigned notes no examination notes accompanied the July 24 assessments. Opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

Second, Dr. Gowda's opinions are inconsistent with his clinical treatment notes. Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009). "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes," id., or when it consists of conclusory statements, Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010). See also Clevenger v. S.S.A., 567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) ("The weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements."). Dr. Gowda's opinions are not supported by his treatment notes and are conclusory. See McCoy v. Astrue, 648 F.3d 605, 617 (8th Cir. 2011) (rejecting claimant's challenge to lack of weight given treating physician's evaluation of claimant's mental impairments when "evaluation appeared to be based, at least in part, on [claimant's] self-reported symptoms, and, thus, insofar as those reported symptoms were found to be less than credible, [the treating physician's] report was rendered less

credible."). An ALJ may "discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); Hackler v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment). The ALJ properly accorded Dr. Gowda's opinions in the assessments little weight inasmuch as his findings were inconsistent with, and unsupported by, the evidence of record. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.") (citation and internal quotation omitted). A review of his treatment notes shows he never imposed any functional limitations or any work restrictions on Claimant. See Fischer v. Barnhart, 56 F. App'x 746, 748 (8th Cir. 2003) ("in discounting [the treating physician's] opinion, the ALJ properly noted that ... [the treating physician] had never recommended any work restrictions for [the claimant]"). Dr. Gowda's treatment notes do not reflect the degree of limitation he noted in his July 24, 2012 assessments. The relevant lack of supporting evidence includes the absence of any restrictions placed on Claimant by Dr. Gowda during his treatment of him. See Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011). The undersigned concludes that the ALJ did not err in affording little weight to Dr. Gowda's opinions of July 24, 2012.

Further, no examining physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health &

Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom, 680 F.3d at 1065; Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Thus, the ALJ did not err in giving little weight to his opinions. Renstrom, 680 F.3d at 1065 (ALJ properly gave treating physician's opinion non-controlling weight when that opinion was largely based on claimant's subjective complaints and was inconsistent with other medical experts). As such, the undersigned finds that the ALJ gave proper weight to Dr. Gowda's opinions.

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the

record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this

Court may not reverse the decision merely because substantial evidence exists in the record that

would have supported a contrary outcome or because another court could have decided the case

differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the

ALJ denying Claimant's claims for benefits should be affirmed.

**B.    Credibility Determination**

Claimant contends that the ALJ's decision is not supported by substantial evidence on the

record as a whole, because the ALJ failed to properly assess his credibility.

The undersigned will begin with a review of the ALJ's credibility determination. See

Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (it is clearly established that, before

determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility).

The Eighth Circuit has recognized that, due to the subjective nature of physical symptoms,

and the absence of any reliable technique for their measurement, it is difficult to prove, disprove

or quantify their existence and/or overall effect. Polaski, 739 F.2d 1321-22. In Polaski, the

Eighth Circuit addressed this difficulty and set forth the following standard:

> The absence of an objective medical basis which supports the degree of severity of
> subjective complaints alleged is just one factor to be considered in evaluating the
> credibility of the testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to subjective complaints,
> including the claimant's prior work record, and observations by third parties and
> treating and examining physicians relating to such matters as: (1) the claimant's
> daily activities; (2) the duration, frequency and intensity of the pain; (3)
> precipitating and aggravating factors; (4) dosage, effectiveness and side effects of
> medication; (5) functional restrictions.

Id. at 1322.

A claimant's complaints of pain or symptoms "shall not alone be conclusive evidence of

disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques." Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) (citing 42 U.S.C. § 423(d)(5)(A). An ALJ may not disregard subjective complaints merely because there is no evidence to support them, but may disbelieve such allegations due to "inherent inconsistencies or other circumstances." Id. (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)); see also Polaski, 739 F.2d at 1322 (although the ALJ may not accept or reject the claimant's subjective complaints based solely upon personal observations, he may discount such complaints if there are inconsistencies in the evidence as a whole). The "crucial question" is not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from working. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003). The credibility of a claimant's subjective testimony is primarily for the ALJ, not this Court, to decide, and this Court considers with deference the ALJ's decision on the subject. Tellez, 403 F.3d at 957. When an ALJ considers the Polaski factors and discredits a claimant's subjective complaints for a good reason, that decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).

In evaluating Claimant's credibility, the ALJ determined that he was not fully credible, in part because his testimony at the hearing was not consistent with what he reported to physicians, the observations by third parties and treating and examining physicians, his activities of daily living, his searching for jobs, his earnings record, and the lack of objective medical evidence supporting the degree of severity of subjective complaints alleged. In her decision the ALJ thoroughly discussed the medical evidence of record and inconsistencies in the record. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective

complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several inconsistencies in the record to support her conclusion that Claimant's complaints were not credible.

The ALJ properly considered the inconsistencies between Claimant's allegations of total disability and his daily activities. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001)("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain). He testified that he us able to do household chores such as washing dishes, vacuuming, dusting, making his bed, and taking out the trash. He also does yard work and helps feed and take care of thirteen to fourteen dogs and twelve cats in exchange for room and board. He is taking online classes in web design, and he spends four to six hours at a time playing video games. As such, the undersigned finds that the discrepancies between Claimant's testimony and what he told doctors is supported by substantial evidence.

The ALJ noted how Claimant testified at the hearing and reported during treatment that he was looking for work and found "[t]his evidence suggests that he believes he is capable of performing this type of work, despite his mental limitations." (Tr. 24). A Claimant's search for employment during a claimed period of disability is a factor the ALJ can properly consider in determining credibility. See House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (holding that the claimant's looking for work was inconsistent with a claim of disability); Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (listing factors supporting ALJ's credibility finding); Goff, 421 F.3d

at 792 ("Inconsistencies between [a claimant's] subjective complaints and [his] activities diminishes [his] credibility); Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) ("[T]he record of contemplating work [including applying for jobs related to and unrelated to his previous work] indicates [the claimant] did not view his pain as disabling."). The ALJ properly considered the hearing testimony as detracting from Claimant's credibility.

Furthermore, as noted by the ALJ, treatment has controlled Claimant's impairments: Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling."); see Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."), and that no physician who examined Claimant found him to have limitations consistent with disability. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined [claimant] submitted a medical conclusion that she is disabled and unable to perform any type of work."). In particular, the ALJ opined how "the evidence shows that the claimant's symptoms are fairly well-controlled with prescribed treatment, his episodes of anxiety and depression are sporadic and fleeting...." (Tr. 22). On numerous occasions during treatment, Claimant reported his medications seem to be working well, and his anxiety is under control. At the time of his hospital admission on June 30, 2011, Claimant presented at Saint Luke's Medical complaining of depression and suicidal thoughts

over the past several months, but he did not continue taking his medications and has been off medications for almost one year. After being admitted for treatment, Dr. Niewald started him on Celexa and found him to be stabilized on medication.

The lack of medical evidence supporting Claimant's complaints was a proper consideration when evaluating his credibility, see Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006), as was his failure to pursue more aggressive treatment. See Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999).

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

Finally, the ALJ cited Claimant's work history and poor earnings record as additional factors detracting from his credibility regarding the severity of his impairments alleged and his

overall motivation to work versus motivation for benefits inasmuch as his record documents poor and overall inconsistent earnings. The ALJ noted that "[t]he work record shows that the claimant has a very sporadic work history consisting of low wages. The claimant's work record itself draws into question his motivation to work and his credibility as a witness herein." (Tr. 24). A poor work history lessens a Claimant's credibility. See Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004)(holding that claimant was properly discredited due, in part, to her sporadic work record reflecting low earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work);Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993); see also Ramirez v. Barnhart, 292 F.3d 576, 581-82 (8th Cir. 2002) (poor work record and financial motivation for benefits may contribute to adverse credibility determination when other factors cast doubt upon claimant's credibility); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability."); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms). This is a proper consideration. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011); accord Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010). The record reflects Claimant's highest earnings were $7,177 in 2009.

The undersigned notes how the medical record shows a one-year gap in treatment from May 2010 until June 2011 undermines Claimant's credibility concerning his disabling impairments. Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility). Such gap suggests that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers v. Shalala, 47 F.3d 299, 302

(8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the

"claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider

in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment

for such a long time during a claimed period of disability tends to indicate tolerable pain."

Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961

(8th Cir. 1994) (holding that infrequent treatment is a basis for discounting subjective complaints).

Seeking limited medical treatment is inconsistent with claims of disabling pain.  Nelson v.

Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991).

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC

those impairments and restrictions found to be credible.  See McGeorge v. Barnhart, 321 F.3d

766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the

impairments and limitations he found credible based on his evaluation of the entire record.").  The

ALJ determined that the medical evidence supported a finding that Claimant could perform past

relevant work as a janitor.  In the alternative, the ALJ found Claimant could perform other work.

The vocational expert testified in response to hypothetical questions, that incorporated the same

limitations as the RFC, and opined that such individual could perform work as a laundry worker,

hand packer, and cleaner.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied

relief solely on the lack of objective medical evidence to support her finding that Claimant is not

disabled.  Instead, the ALJ considered all the evidence relating to Claimant's subjective

complaints, including the various factors as required by Polaski, and determined Claimant's

allegations not to be credible. Although the ALJ did not explicitly discuss each <u>Polaski</u> factor in making her credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. <u>See</u> <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. <u>Id.</u>; <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. <u>See</u> <u>Leckenby v. Astrue</u>, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before her and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. <u>Battles v. Sullivan</u>, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. <u>See</u> <u>Guilliams</u>, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included the medical evidence of record, his testimony at the hearing was not consistent with what he reported to physicians, the observations by third parties and treating and examining physicians, his activities of daily living, his searching for jobs, his earnings record, and the lack of objective medical evidence supporting

the degree of severity of subjective complaints alleged. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the

ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of

the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

          /s/ Terry I. Adelman            
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of February, 2015.